## SHAW v. SAN DIEGO WATER CO.

L. A. No. 186; November 6, 1897.

50 Pac. 1074.

In bank. For opinion in division, see ante, p. 808.

PER CURIAM.—Rehearing denied.

BEATTY, C. J.—I dissent from the order denying a rehearing of this cause, upon the grounds stated in the following opinion upon the case, originally prepared by Commissioner Searls, which I think is correct, and should have been adopted by the court.

SEARLS, C.—This is an action to restrain the San Diego Water Company (a corporation organized and existing under the laws of the state of California, and engaged in the business of supplying and selling water to the inhabitants of San Diego for domestic and other purposes) from turning off and refusing to supply the plaintiff with water for domestic purposes, and for the purpose of irrigation. Plaintiff had judgment from which defendant appeals.

The cause was submitted to the court upon an agreed statement of facts, from which it appears that plaintiff has a residence in the city of San Diego, and two city lots, aggregating one hundred feet front, upon which he resides. He has obtained water for domestic purposes and irrigation of said lots from defendant. In 1894 defendant, on its own motion, and without the request of plaintiff, under an ordinance of the city of San Diego establishing water rates for the year ending June 30, 1895, placed a meter in the pipe conducting water to the premises of plaintiff, and the whole question involved in this case is this: Had defendant a right to demand and collect from plaintiff for the month of July, 1895, meter rates, which would entitle it to collect $10.10, and which plaintiff refused to pay, or family rates, which entitled defendant to $3.65, and which sum plaintiff tendered to defendant, and the latter refused to receive? In the month of February, 1894, and again in February, 1895, the city council of San Diego, in accordance with the requirements

of section 1 of article 14 of the constitution, adopted ordi-
nances, to take effect on the 1st of July next ensuing, regula-.
ting the rates and compensation to be collected by any person
or corporation supplying water for domestic use and private
purposes to the inhabitants of that city during the years
commencing July 1, 1894, and July 1, 1895, respectively.
The ordinance of 1894 fixed the price to be charged per 1,000
gallons for meter rates, required the water company to furnish
meters upon demand of consumers, and payment by the latter
of $7, and also provided that "if a meter is placed and used
as a meter otherwise than at the consumer's request, said
person, company or corporation shall be entitled to collect
a minimum sum of $1.50 per month for water. These pro-
visions shall apply to meters set either heretofore or here-
after." Where the meter was placed at the consumer's
request, $2 per month was the minimum charge. It was
while this ordinance was in force that defendant, on its own
motion, placed the meter on plaintiff's supply-pipe. The or-
dinance of 1895 fixes specific rates per month for the use of
water for a great variety of purposes, including bathtubs,
water-closets, barber-shops, etc. Subdivision 17 of section
1, under the head of "Families," is as follows: "Dwellings,
tenement houses, flats and other apartments, the same being
occupied by not more than three persons, one dollar per
month, and for each additional person fifteen cents per
month." The twenty-fifth subdivision of the same section
is as follows: "Irrigation of lawns, etc., one cent for every
front foot per month." Subdivision 30 of the same section is
as follows: "Meter Rates. (30) The rates for water fur-
nished to consumers in any one month through meters are
fixed as follows: Twenty-two and one-half cents per 100
cubic feet, or 30 cents per 1,000 gallons, provided the amount
used shall not exceed 1,333⅓ cubic feet or 10,000 gallons per
month; 18¾ cents per 100 cubic feet, or 25 cents per 1,000
gallons for each 1,000 gallons over 10,000 and not exceeding
30,000 gallons; .15 cents per 100 cubic feet or 20 cents per
1,000 gallons for each 1,000 gallons over 30,000 gallons and
not exceeding 100,000 gallons; 11¼ cents per 100 cubic feet
or 15 cents per 1,000 gallons for each 1,000 gallons over
100,000 gallons. (31) Where water is furnished for steam
engines, gas machines or works, wash-houses, Chinese or
otherwise, street and sidewalk sprinkling, or for any other

purpose whatever, and no compensation is herein fixed therefor, and satisfactory rates cannot be agreed upon, the meter rates shall govern.'' Section 2 provides, as did the ordinance of 1894, for meters to be furnished on demand of rate payers and on like terms, but does not provide that meters shall be placed, except on demand of consumers. Section 4 is as follows: ''Sec. 4. Consumers paying the following monthly rates shall be entitled to use monthly the following quantities of water: $1 monthly, 4,000 gallons; $1.25 monthly, 5,000 gallons; $1.50 monthly, 6,200 gallons; $2 monthly, 8,300 gallons.'' The ordinance provides fixed and specific rates per 1,000 gallons for water used for flushing sewers, for sprinkling purposes, for irrigating tracts of land of two or more acres, to shipping in the harbor, to water-supply boats, and for hydraulic elevators and motors in hotels and stores. The agreed statement shows that during the month of July, 1895, plaintiff received from defendant, and used upon his premises, 45,532 gallons of water, measured through a meter.

The contention of appellant may be summarized thus: (a) The ordinance of 1894 authorized defendant, on its own motion, to place meters upon its own supply-pipes of its customers, the consumers of water, and in December of that year it lawfully placed a meter upon plaintiff's supply-pipe. (b) Under paragraph 30 of section 1 of the ordinance of 1895, which provides that ''the rates for water furnished to consumers in any one month through meters are fixed as follows,'' etc., and hence, as defendant furnished water to plaintiff through a meter, it was entitled to charge the meter rate fixed by the ordinance. We think this contention cannot be sustained. Section 2 of the ordinance provides that any water-rate payer shall have the right to demand a meter, and to pay a meter rate, upon tendering $7 for placing the meter, etc. It is for consumers who of their own volition have called for meters, and for the other cases provided for in the ordinance where meter rates are to be charged, that this section must be presumed to have been adopted, and not generally to the mass of consumers. The ordinance fixes specific rates to be paid for water to be used for nearly forty different purposes. The theory advanced by appellant would render all these provisions nugatory. When, therefore, the ordinance fixes rates to consumers who receive water through meters, it must be construed to mean such consumers as have elected

to have meters, and to receive water through the same, and to such cases as under the ordinance pay, not a specific rate, but a meter rate.

We have found it somewhat difficult to harmonize the various portions of the ordinance of 1895 so as to give force and effect to all of its provisions. The conclusions we reach after a careful study of its various parts may be summarized, so far as applicable to this case, as follows: (1) Where the ordinance prescribes a fixed rate for a given service, that rate, in the absence of some agreement to the contrary, must prevail, and cannot be varied at the option of the parties. (2) Where water is furnished for any purpose whatever, and no compensation is fixed by the ordinance, or by agreement, then, under the thirty-first paragraph of section 1 of the ordinance, the meter rates will govern. (3) The ordinance has a fixed specific rate for the uses to which plaintiff applies the water by him received from defendant, but by section 4 of the ordinance the quantity to be used by a consumer is limited in quantity, monthly, as follows, viz.: Those paying $1, to 4,000 gallons; those paying $1.25, to 5,000 gallons; those paying $1.50, to 6,200 gallons; those paying $2, to 8,300 gallons. The justice of limiting to a given quantity of water the consumer who pays a given price is apparent. Were it otherwise, fixing a given price to a consumer, for, say, family use, would be a license to him to waste as much water as he saw fit. This would be rank injustice; hence the provision of the ordinance. The ordinance fails to prescribe any quantity of water to which consumers shall be limited who pay a sum in excess of $2 per month. It was probably supposed that this would cover all the cases in which meter rates were not provided. We cannot suppose that it was the intention of the lawmakers to limit a consumer who pays $2 per month to the use of 8,300 gallons of water, and to permit one who pays $3.65 per month to consume water ad libitum. Family rates are fixed by the ordinance at a given price per month, but this limitation is to be taken in connection with the quantity of water which, on payment of the price, the consumers are entitled to use, as provided in section 4. In other words, they are entitled to a given quantity of water for a given sum of money. When the quantity consumed is in excess of the quantity

specified in section 4 of the ordinance, there is no specific price fixed, except by paragraph 31 of section 1, which, after enumerating certain uses, adds, "or for any other purpose whatever, and no compensation is herein fixed therefor, and satisfactory rates cannot be agreed upon, the meter rates shall govern." To illustrate: A consumer who pays a monthly rate of $1 per month is entitled to use monthly 4,000 gallons of water. To determine this quantity a meter is essential, and for that purpose may manifestly be inserted. When the 4,000 gallon limit is reached, one of two things must occur—either the defendant can cut off the further supply for the month, or, if it continues the supply, it is entitled to payment therefor, under the clause of the ordinance above quoted, at meter rates, upon the ground that the compensation therefor is not fixed by the ordinance. That this last course is contemplated by the ordinance we think clear. In no other way can effect be given to section 4, which limits the quantity of water to be used for a given price. The family rate fixed by the ordinance regulates the sum to be paid up to the limit of quantity fixed by section 4. When the consumer reaches that limit as to quantity, he has received all that he has paid for; and, if he consumes additional water, it is but just that he should pay for it in the manner provided in such case by the ordinance. It is true, section 4 of the ordinance does not specify the quantity of water to which specific rate payers are entitled whose rate is in excess of $2. But we can hardly suppose that the local legislature intended to confine the consumer who pays $2 to 8,300 gallons per month, and at the same time to permit the consumer who pays an additional fifteen cents to consume 1,000,000 gallons, or other indefinite quantity. The question presents difficulties, and, the ordinance being obscure, we may properly consider the circumstances existing, and the state of the local law in force, at the date of its adoption, as aids in its interpretation. Turning to the ordinance of 1894, and we find that section 4 of that ordinance is as follows: "Sec. 4. Nothing herein contained shall be construed as requiring or permitting the person, company or corporation to charge or collect meter rates in any case where he or it shall, at his or its own cost, apply, either before or after the passage of this ordinance, a waste detector, except as hereinafter provided. Within the meaning of this ordinance a waste de-

tector is a meter applied for the purpose of detecting waste. Wherever any waste detector shows that any consumer, during any month, is using a quantity of water which at meter rates exceeds his house and irrigation rate, said person, company or corporation may collect for such excess at meter rates, but shall not impose meter rates, with this exception, unless in cases permitted by this ordinance.'' A waste detector is but a meter, and it will be observed from the latter clause of the section that, in effect, it authorized charging the consumer for all the water used by him at meter rates, and, when the charge therefor exceeded his house and irrigation rate, he was to be charged with the excess. In other words, the last clause of the section completely annulled the prior clause in the same section, and, in effect, entitled the defendant to charge meter rates where it had, on its own motion, placed meters on its supply pipes, as well as where demanded by consumers. That ordinance, like the one of 1895, contained a meter rate. We may well suppose that the object of adopting an ordinance in most respects precisely like that of 1894, but with section 4 entirely different, was to preclude charging meter rates to consumers with fixed rates, and at the same time to guard against waste and excess in the user by those who pay a fixed sum per month. The ordinance of 1894 guarded against such waste and excess by charging a meter rate on all the water used. The ordinance of 1895 attains the same end by limiting the quantity to which the consumer is entitled at a given price. Under section 4, plaintiff, by parity of reasoning, should be entitled to the use of water in proportion to the sum he pays in the ratio established by the section. This would entitle him to a quantity approximating 15,000 gallons per month in return for his rate of $3.65. For the residue of the water consumed by him in July, 1895, he should stand charged with general meter rates, not simply because defendant has attached a meter to his supply-pipe, but because the ordinance of 1895 having failed to fix the compensation therefor, he is, under paragraph 31 of section 1 of such ordinance, chargeable with meter rates. It follows that the judgment should be reversed and the cause remanded.

I concur: Belcher, C.